IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KOLMAR AMERICAS INC., AND BALOISE BELGIUM NV/SA, <br> PLAINTIFFS, <br><br> v. <br><br> M/T BUNGA ANGSANA *in rem.*, and BRYGGEN SHIPPING INTERNATIONAL AS, and AET PRODUCT TANKERS SDN BHD, <br> *In personam* <br> DEFENDANTS. | C.A. NO.: _____ <br> Admiralty Rule 9(h) |

## COMPLAINT

Plaintiff, Kolmar Americas Inc. and Baloise Belgium NV/SA, ("Plaintiffs" or "Claimants") by and through its attorneys Hill Rivkins LLP, complaining of the defendants, and hereby state upon information and belief:

### A.

### PARTIES

1. Plaintiff, Kolmar Americas Inc. ("Kolmar"), at all material times relevant to the allegations set forth herein was and is an entity organized and existing under law with an office and place of business at 10 Middle Street, Penthouse, Bridgeport, Connecticut 06604.

2. Kolmar asserts this claim on its own behalf as the receiver of the shipment, and on behalf of the shippers and insurers, however said interests ultimately appear.

3. Kolmar has performed all conditions precedent to maintain this action.

1

4. Baloise Belgium NV/SA ("Baloise"), at all material times relevant to the allegations set forth herein was and is an entity organized and existing under foreign law with an office and place of business at Posthofbrug 16, 2600 Antwerp, Belgium.

5. Baloise is the subrogated underwriter for the insured portion of the claim, and it has performed all conditions precedent to maintain this action.

6. Defendant, Bryggen Shipping International AS ("Bryggen") was and is an entity organized and existing under foreign law which does not maintain a regular place of business in Texas or a designated agent on whom service may be made, and thus may be served through Rule 4(k)2 of the F.R.C.P. or through the Secretary of State for the State of Texas under the Texas Long-Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.044 et seq., at Guliskogaarden, Bryggen 47, N-5003, Bergen, Norway, its home office.

7. Bryggen, upon information and belief, was the time-chartered owner of the vessel, MT BUNGA ANGSANA ("Vessel"), which entered into a charter party agreement dated April 12, 2018, with Kolmar Group AG, as charterer.

8. Defendant, M/T BUNGA ANGSANA in rem., is a tanker vessel with IMO Number 9399349, registered under the Malaysian flag, which transported the subject shipment from LeHavre, France to New Haven, Connecticut, and thereafter discharged the remaining cargo consisting of approximately 270 metric tons at the Vopak Terminal, in Deer Park, Houston, Texas 77536.  The vessel has previously been served *in rem,* and is obligated to file a claim of owner.

9. Defendant, AET Product Tankers SDN BHD ("AET) was and is an entity organized and existing under foreign law which does not maintain a regular place of business in Texas or a designated agent on whom service may be made, and thus may be served through Rule

4(k)2 of the F.R.C.P. or through the Secretary of State for the State of Texas under the Texas Long-Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.044 et seq., at Level 30 Menara Dayabumi, Jalen Sultan Hishamuddin, 50050 Kuala Lumpur, Malaysia, its home office.

10. AET, at all times relevant to the allegations set forth herein, was the record owner of the Vessel, and owned, chartered, and manned the subject Vessel during the subject voyage.

11. At all material times relevant to the allegations herein the Vessel was or will be in the jurisdiction of this Honorable Court.

### B.

### JURISDICTION & VENUE

12. This is a maritime claim within Rule 9 (h) of the Federal Rules of Civil Procedure. This Honorable Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1333.

13. Venue is proper in this Court, because at the time of the incident the subject Vessel discharged the damaged cargo at Vopak terminal in Deer Park, Texas.

14. This is a protective action which is filed in conjunction with a Demand for Arbitration and a written agreement to arbitrate which was entered into on the Asbatankvoy charter form, wherein arbitration in New York pursuant to New York law was agreed to by the parties.

15. A Demand for Arbitration ("Demand") was filed with the Defendants on/about November 11, 2020, in accordance with the letter of undertaking, charter and bill of lading which were entered into by the parties.

16. To the extent that any defenses are raised by Defendants to the Demand, Plaintiff reserves its right to pursue its claim for damage in this action.

## C.

## FACTS

17. The dispute arises from the carriage of 7,948.28 metric tons of fatty acid methyl ester (FAME)/TME Biodiesel ("Shipment") laden aboard the M/T BUNGA ANGSANA on/about April 18, 2018, at the Port of LeHavre, France for discharge at New Haven, Connecticut for the account of Kolmar Americas Inc.

18. The shipment was stowed in cargo tanks 1P, 4S, 6P and 6S in good order and condition, and otherwise consistent with its use as a biodiesel blend stock. Voyage instructions and the governing Charter Party required Defendants to "maintain cargo temperature during the voyage as loaded".

19. Upon information and belief, Bill of Lading No. 1 dated April 19, 2018 was duly negotiated, and the Vessel was in public or private carriage, in that this was a partial shipment for Claimants, and other cargo interests loaded cargo aboard the Vessel.

20. At all material times relevant to the dispute, the Shipment was loaded in "good order and condition" and in conformance with its anticipated sale by Claimants to the buyers, and the criteria normally expected of FAME/B100 Biodiesel.

21. The Vessel arrived at the port of New Haven, Connecticut, the designated discharge port on/about May 18, 2018, where it discharged 6792.794 MT's (net standard volume) of the Shipment to the shore tank no. 11A. The Shipment, however, was not completely discharged due to clingage of solidified product to the Vessel's tank sides and bottom.

22. The Vessel departed New Haven, Connecticut without informing cargo receivers, as to its plans to discharge the remaining 270.871 metric tons of cargo remaining aboard ("ROB").

23. Claimants maintain that the vessel failed to heat or otherwise maintain the loaded temperature of the cargo, as specified by the Voyage Instructions as well as the Bill of Lading and the Charter Party's terms and conditions.

24. Kolmar thereafter arranged for discharge of the ROB cargo in Houston at the Vopak Terminal, tank no. 765, in Deer Park, Texas.

25. Upon delivery of the ROB, the shipment was off-specification for FAME B100 and not in compliance with the Quality Certificate issued at LeHavre or the intended end use of the cargo as a blend stock. Upon information and belief, the Defendants heated the cargo from its solidified state over the course of the voyage transit from New Haven, Connecticut to Deer Park, Texas where it arrived on/about June 4, 2018.

26. As a result of Defendants' failure to properly care for the cargo, and its failure to discharge the cargo at New Haven, Connecticut, after it arrived there on/about May 18, 2018, damages in the amount of $220,706.46, as best as can now be estimated, have been incurred.

27. An agreement to extend the time for suit was entered into for and on behalf of Kolmar Americas Inc. and its subrogated underwriters with The Britannia Steam Ship Insurance Association Limited, up through November 17, 2020.

28. The Charter Party Form is designated by the fixture recap is:

> ASBATANKBOY including Kolmar terms as per last done Kolmar/owners on MT Atlantic Canyon, C/P dated 15 December 2016, as mentioned here below:
>
> * * *
> Part 1 Clause K: New York Law to apply.
>
> Clause 13 Heating/Cooling Cargo to be heated/cooled to Charterers or Charterers' Inspectors' instruction. If cargo requires heating, heating coils to be tested prior to loading and tightness certificate to be issued and/or undersigned by Independent Inspectors attending cargo operations. If the

<blockquote>
failure to perform cargo, heating/cooling impairs normal discharge of cargo and heating/cooling is performed at discharge port or berth in order to reach the required levels, all time used, energy, equipment and costs related thereto shall be Owners' account. <u>Owners shall reimburse Charterers for all reasonable damages sustained by Charterers because of such failure and its consequences. Owners shall reimburse Charterers for all costs related thereto because of such failure and its consequences. Owners shall upon first demand of Charterers, open a bank or P&L Guarantee for the estimated amount of damages, according to or with logical amendments to the wording of the "Rotterdam Guarantee Form 1992" All to be acceptable to Charterers.</u> (Underline added)
</blockquote>

29. The Charter further provides:

    ADHERENCE TO VOYAGE INSTRUCTIONS

    * * *

    a. Owners shall be responsible for any time lost and indemnify Charterers agent any costs, expenses, delays or other loss incurred by reason of the vessel or the Master failing to comply with Charterers' voyage instructions.

    * * *

30. Despite due demand for security for the full amount of damage, Defendants limited the amount of the guarantee to $200,000.00 including costs.

31. Defendants breached the terms and conditions of the Bill of Lading and the Charter Party, and under the law, in failing to deliver the cargo in the same good order and condition as received.

32. It is undisputed that Defendants breached the HEATING/COOLING clause at Section 13 of the charter party and failed to heat the cargo. Despite due demand for an explanation as to the Vessel's failure to heat the cargo. Charterers requested Defendants to produce the corresponding Survey Report of Mr. Syed A. Shahzad, Maritech Commercial Houston, who attended the discharge, which Defendants have refused to supply.

33. The Vessel was unseaworthy and was otherwise unfit to carry the subject cargo.

34. The Bill of Lading and governing charter party incorporate the ASBATANKVOY 1977 charter form and provides for New York law to apply. The arbitration clause in the ASBATANKVOY form states as follows:

> 27. ARBITRATION. Any and all differences and disputes of whatever nature arising out of this Charter shall be put to arbitration in the City of New York or in the City of London whatever place is specified in Part I of this charter pursuant to the laws relating to arbitration there in force, before a board of three persons, consisting of one arbitrator to be appointed by the Owner, one by the Charterer, and one by the two so chosen. The decision of any two of the three on any point or points shall be final. Either party hereto may call for such arbitration upon service upon any officer of the other, wherever he may be found, of a written notice specifying the name and address of the of the arbitrator chosen by the first moving party and a brief description of the disputes or differences which such party desires to put in arbitration. If the other party shall not, by a notice served upon an officer of the first moving party within 20 days of service of such first notice, appoint its arbitrator to arbitrate the dispute or differences specified, then the first moving party shall have the right without further notice to appoint a second arbitrator, who shall be a disinterested person with precisely the same force and effect as if second arbitrator has been appointed by the second party. In the event that the two arbitrators fail to appoint a third arbitrator within 20 days of the appointment of the second arbitrator, either arbitrator may apply to a Judge of any court or maritime jurisdiction in the city abovementioned for the appointment of a third arbitrator, and the appointment of such arbitrator by such Judge on such application shall have precisely the same force and effect as if such arbitrator had been appointed by the two arbitrators. Until such time as the arbitrators finally close the hearings either party shall have the right by written notice served on the arbitrators and on an officer of the other party to specify further disputes or differences under this Charter for hearing and determination. Awards made pursuance to this clause may include costs, including a reasonable allowance for attorney's fees and judgment.

D.

## COUNT I – BREACH OF CONTRACT

35. Plaintiffs repeat and realleges each and every allegation set forth in paragraphs First through Thirty-Second as though fully set forth herein at length.

36. The Shipment was delivered to the Vessel at the port of LeHavre, France on/about April 18, 2018, in good order and condition and otherwise suitable for use as a biodiesel blend stock, and in compliance with the criteria normally expected of FAME/B100 Biodiesel.

37. The Vessel arrived at the Port of New Haven, Connecticut, on/about May 18, 2018, where it could not fully discharge the Shipment, and approximately 270 metric tons was found to have congealed and hardened inside the tanks due to the failure of the Vessel to heat or otherwise maintain the loaded temperature. The shipment was found to be off-specification and/or contaminated, causing monetary damages to Plaintiff.

38. By reason of the premises, the Defendants were reckless and careless in the handling of Plaintiff's Cargoes, and breached, failed and violated their duties and obligations as carriers, under the charter party and bill of lading, and were otherwise at fault.

39. By reason of the premises, the Defendants failed to heat the cargo and thereafter sailed from the discharge port without delivering the portion of the shipment which had congealed, and thereafter heated it over the voyage from New Haven, Connecticut to Deer Park, Texas where it arrived on/about June 4, 2018.

40. By reason of the above-stated premises, Plaintiffs have sustained damages, as nearly as same can now be estimated, no part of which has been paid although duly demanded, in the amount of $220,706.46. Plaintiff demands recovery from all Defendants, jointly and severally.

41. To the extent that Plaintiffs' claim for a breach of the contract of carriage is subject to arbitration, Plaintiff specifically reserves its right to arbitrate the substantive matters at issue as may be required by the relevant contract(s) of carriage.

## G.

## PRAYER

42. All and singular the premises are true and within the admiralty, maritime, and pendent jurisdiction of the United States and of this Honorable Court.

Wherefore, Plaintiff prays:

1. That process in due form of law according to the practice of this Court may issue against defendants, BRYGGEN SHIPPING INTERNATIONAL AS and AET PRODUCT TANKERS SDN BHD, and the M/T BUNGA ANGSANA in rem. citing them to appear and answer the foregoing, failing which a default will be taken against them for the principal amount of the claim, plus interest, costs and attorneys' fees;

2. That this court will grant to plaintiff such other and further relief as may be just and proper.

Respectfully submitted,

/S/ Dana K. Martin

_____
DANA K. MARTIN
SDTX I.D. No.: 126
Texas Bar No.: 13057830
HILL RIVKINS LLP
1000 N. Post Oak, Ste. 220
Houston, Texas 77055
Telephone:    (713) 222-1515
Direct Line:    (713) 457-2287
Facsimile:    (713) 222-1359
E-mail: dmartin@hillrivkins.com

**ATTORNEYS FOR PLAINTIFFS
KOLMAR AMERICAS INC. and
BALOISE BELGIUM NV/SA.**

## **VERIFICATION**

THE STATE OF TEXAS     *
                                          *

COUNTY OF HARRIS     *

Dana K. Martin, being duly sworn, deposes and says:

I am an attorney and member of the firm of Hill Rivkins LLP, attorneys for Plaintiff. I am over twenty-one (21) years of age and fully competent to make this Verification. I have read the foregoing Complaint and know its contents. The Complaint is true to my knowledge, except as to the matters stated in the Complaint to be based on information and belief, and as to those matters, I believe them to be true.

The source of my information and the grounds for my belief as to those matters stated in the Complaint, to be alleged on information and belief, are documents and records in my files.

_____
Dana K. Martin

Subscribed and sworn to before me, the undersigned authority, this 12th day of November, 2020.

ROSA LANDIN
Notary ID #4267395
My Commission Expires
April 2, 2024

_____
Notary Public, State of Texas
My Commission Expires: 4/2/24